IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARTHUR W. CARSON, ID # 517349, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:06-CV-0252-B (BH) |
| | ) | ECF |
| NATHANIEL QUARTERMAN, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge follow:

I. BACKGROUND

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ habeas corpus pursuant to 28 U.S.C. § 2254 to challenge the constitutionality of the application of good- and work-time credits to his twenty-year sentence imposed for his conviction for attempted murder in Cause No. F88-8496-LI. Respondent is Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

On October 20, 2005, petitioner filed a state application for writ of habeas corpus wherein he challenged the constitutionality of the application of credits to his sentence. On January 25, 2006, the Texas Court of Criminal Appeals denied that application without written order.

In February 2006, petitioner filed the instant federal habeas action pursuant to 28 U.S.C. § 2254. In two grounds for relief, he claims that (1) he is being illegally detained on false representation and misuse or non-use of accrued good- and work-time credits in violation of his rights to due

process and equal protection, and (2) the "paper hearing" conducted in state court was unfair and without jurisdiction.

On June 14, 2006, respondent filed his answer to the petition. He concedes that petitioner has sufficiently exhausted his state remedies with respect to the claims raised in the instant petition because petitioner raised the same claims in his state application for writ of habeas corpus. He argues that petitioner's first claim lacks merit because petitioner (1) merely disagrees with Texas law; (2) has no protected liberty interest in release on parole, although his accrued good- and work-time credits are applicable to his eligibility for parole and factor into the discretionary decision whether to release him to parole; and (3) is ineligible for release on mandatory supervision. Respondent argues that petitioner's second claim is not cognizable in a federal habeas action.

On June 26, 2006, the Court received petitioner's traverse to that answer in which petitioner requests an evidentiary hearing, and argues among other things that respondent has mischaracterized his claims. On that same date, the Court received a motion for leave of Court to conduct discovery.[1] On September 1, 2006, the Court received a motion for summary judgment from petitioner.

## II.  REQUEST TO TERMINATE ASSIGNMENT

Petitioner has filed a "Request to Terminate Assignment of the Magistrate Judge - Irma C. Ramirez." Although petitioner claims that the undersigned Magistrate Judge "has prejudiced [his] ability to obtain a fair and effective or expeditious Resolution of His claim(s)", he provides no support for such claim. He identifies no act or omission that has prejudiced him, nor any

---

[1]  In a contemporaneous order, the Court has denied the request for leave to conduct discovery.

2

particularized prejudice. He merely makes the foregoing general statement of prejudice and suggests that he has not consented to a magistrate judge presiding over his case.

Contrary to petitioner's allegations, the Magistrate Judge does not preside over this case by consent of the parties – the Court has referred this habeas case to her pursuant to 28 U.S.C. § 636(b) for handling preliminary matters and for issuing findings, conclusions, and recommendation on the habeas petition. To the extent that petitioner's request can be construed as a request for the undersigned Magistrate Judge to recuse herself based on bias or prejudice, it is **DENIED**. To the extent that the motion is directed to the District Court, it should deny the request to terminate the assignment of the undersigned Magistrate Judge.

## III. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The denial of petitioner's state writ constitutes an adjudication on the merits of the claims raised therein. *Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). The AEDPA standards enumerated in 28 U.S.C. § 2254(d) thus apply to this action.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

4

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind, the Court proceeds to address the merits of petitioner's claims.

## IV.  CLAIM 1

Petitioner asserts a number of arguments in his first claim. He alleges that he is being illegally detained on false or fraudulent representation and misuse or non-use of accrued good- and work-time credits in violation of his rights to due process and equal protection. He claims that although he has earned work- and good-time credits,[2] they have not been applied so as reduce his sentence, and that there has been a discriminatory application of his time credits. He specifically calls into question the constitutionality of Tex. Gov't Code § 508.149, the current statute addressing release on mandatory supervision. He further asserts that his confinement violates the United States

---

[2]  When petitioner was sentenced in July 1989, Texas provided for the accrual of "good conduct time, in an amount determined by the director which shall not exceed 15 days for each 30 days actually served, for diligent participation in an industrial program or other work program or for participation in an agricultural, educational, or vocational program provided to inmates by the department." *See* Tex. Rev. Civ. Stat. Ann. art. 6181-1, § 3(d) (Vernon 1988). Section 4 of Article 6181-1 further provided: "Good conduct time applies only to eligibility for parole or mandatory supervision as provided in Section 8, Article 42.18, Code of Criminal Procedure, and shall not otherwise affect the inmate's term. Good conduct time is a privilege and not a right." As recognized by Article 6181-1, Texas did not differentiate between good conduct and work credits at that time. Furthermore, as often recognized by this Court, "[u]nder Texas law work-time credits are treated as good-time credits." *See, e.g., LaFoe v. Dretke*, No. 3:03-CV-1722-M, 2004 WL 287734, at *4 n.10 (N.D. Tex. Feb. 5, 2004) (findings, conclusions, and recommendation of Magistrate Judge), *accepted by* unpub. order (N.D. Tex. Mar. 9, 2004).

Constitution and Article 23(2) of the United Nations Charter of Universal Declaration of Human Rights, which provides that "Everyone, without any Discrimination, has the Right to equal pay for equal work." Finally, he contends in a section titled "Pendent Jurisdiction" that respondent has fraudulently misused state property by inputting his credit calculations "into its computer", and that pursuant to the "Clean Hands Doctrine", respondent's deceptive reward to petitioner of time credits constitute quasi-good-time credits earned.[3]

The Court first begins with the well-settled proposition that federal habeas relief cannot be had "absent the allegation by a [petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). Petitioner here argues that he has been deprived of rights under the United States Constitution and a treaty that requires equal pay for equal work. No court has applied the treaty in the prison context. Furthermore, the United Nations Charter merely sets a "goal of 'equal pay for equal work'", and does not "create binding international law." *See In re S. African Apartheid Litig.*, 346 F. Supp. 2d 538, 552-53 (S.D.N.Y. 2004). Thus, even if the treaty applies in the prison context, the equal pay provision of the treaty provides no basis for habeas relief.

The Court next turns to the alleged deprivation of a constitutional right. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a particular state may create a constitutionally protected interest in parole, *see*

---

[3] In his traverse, he reasserts some of the arguments and contentions made in his supporting brief while also presenting other arguments, including a claim that the State is contractually bound to credit his sentence for his work credits; that respondent has created a "quasi interest" by placing the credits into their computer; that the failure to credit his sentence constitutes cruel and unusual punishment.

*id.* at 12, Texas has created no such protected liberty interest which would implicate constitutional considerations, *see Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997); *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995); *Orellana*, 65 F.3d at 32.   Furthermore, while "[t]he Constitution does not guarantee good time credit for satisfactory behavior while in prison", a state may "create a right to good time credit" that is protected by the Constitution.  *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)).   Texas has created no liberty interest in good-time credits in the context of parole.  *See id.*   However, for those covered by the mandatory supervision scheme in place in Texas prior to September 1, 1996 for earned good-time credits, Texas has created an expectation of early release that is protected by the United States Constitution, *see Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000).

## A.  Parole

Although he is eligible for parole, petitioner has no constitutionally protected expectation for release on parole.  To the extent he raises a due process claim related to a denial of release on parole, such claim fails.  *See Johnson v. Rodriguez*, 110 F.3d 299, 305 (5th Cir. 1997).  Furthermore, because petitioner has not shown that the State denied him release on parole because of any purposeful discrimination or any impermissible motive, such as race, he has stated no valid equal protection claim.  *See id.* at 306.  "The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996).  Thus, "a party who wishes to make out an Equal Pro-tection claim must prove "the existence of purposeful discrimination" motivating the state action which caused the complained-of injury."  *Johnson*, 110 F.3d at 306.  Having considered all of peti-

7

tioner's various arguments and contentions, the Court finds no constitutional violation related to petitioner's continued incarceration despite his eligibility for parole. As stated in Section 4 of Article 6181-1, time credit for good conduct, including work-credits, is a privilege that only applies to eligibility for parole or mandatory supervision and does "not otherwise affect the inmate's term" of incarceration."

## B. Mandatory Supervision

By virtue of his conviction for attempted murder with a deadly weapon, petitioner is not eligible for release on mandatory supervision. *See* Tex. Code Crim. Proc. Ann. art. 42.18, § 8(c) (Vernon 1988) (now codified as Tex. Gov't Code § 508.149(a)(1) (2006)).[4] Petitioner contends that § 508.149 unconstitutionally discriminates between "3g offenders" and "other offenders." He further contends that the statute denies his liberty interest in "some type of incentive" if his "earned credits are meaningless."

Petitioner's challenge to the mandatory supervision scheme applicable to him entitles him to no habeas relief. All prisoners convicted of attempted murder with a deadly weapon in 1989, regardless of race or other impermissible factor, are ineligible for release on mandatory supervision. "The State does not violate the tenants of equal protection by precluding release on mandatory supervision to prisoners who have committed certain enumerated offenses. Making certain classes of prisoners ineligible for release on mandatory supervision based upon the nature of their underlying

---

[4] Section 8(c) of Article 42.18 provides in pertinent part that "[a] prisoner may not be released to mandatory supervision if the prisoner is serving a sentence for an offense and the judgment for the offense contains an affirmative finding under Subdivision (2), Subsection (a), Section 3g, Article 42.12, of this code." Section 508.149(a) specifically makes an inmate ineligible for release "to mandatory supervision if the inmate is serving a sentence for or has been previously convicted of . . . (1) an offense for which the judgment contains an affirmative finding under Section 3g(a)(2), Article 42.12, Code of Criminal Procedure."

8

criminal offense does not offend the notion of equal protection." *Russell v. Cockrell*, No. 3:01-CV-1425-D, 2003 WL 21750862, at *7 (N.D. Tex. July 25, 2003) (findings, conclusions, and recommendation accepted by District Court). That the mandatory supervision statute differentiates between offenders based on crime of conviction does not make the statute unconstitutional.

With respect to the contention that the statute denies petitioner a liberty interest in "some type of incentive", the Court first notes that his earned credits are not "meaningless" considering that by statute, they are factored into his eligibility for parole. The law is clear, moreover, that a prisoner who is ineligible for release to mandatory supervision is deprived of no protected liberty interest when he or she is denied release to mandatory supervision. Ineligible inmates simply have no liberty interest in release to mandatory supervision.

Having considered all of petitioner's various arguments and contentions, the Court finds no constitutional violation related to petitioner's continued incarceration despite the availability of release to mandatory supervision for other inmates.

In conclusion, although he frames his arguments in various ways, petitioner is entitled to no habeas relief on his first claim because the application of his time credits have not deprived him of any right secured to him by the United States Constitution or the laws of the United States.[5]

---

[5] Although the Court has considered all of petitioner's various arguments, the unaddressed arguments do not warrant discussion in light of the principles relied upon in the body of these findings and recommendation. The Court nevertheless notes that "[i]ncarceration does not constitute cruel and unusual punishment." *Gill v. Stella*, 845 F. Supp. 94, 102 (E.D.N.Y. 1994). Rather, "[a]fter incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment." *Ingraham v. Wright,* 430 U.S. 651, 670 (1977) (citations and internal quotation marks omitted). The failure to credit petitioner's sentence with the time credits that he has earned does not constitute cruel or unusual punishment.

## V.  CLAIM TWO

In his second claim, petitioner complains about a "paper hearing" conducted in state court related to the state habeas application he filed to challenge the application of his time credits to his sentence.  He asserts that the hearing was unfair, and that the court lacked jurisdiction to make "findings due to a pending Recusal motion."

Petitioner's second claim raises no claim cognizable under 28 U.S.C. § 2254.  As already mentioned, federal habeas relief cannot be had "absent the allegation by a [petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995); *accord* 28 U.S.C. § 2254(a). This Court cannot grant habeas corpus relief "to correct alleged errors in state habeas proceedings." *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (holding that habeas relief was not available for such alleged errors).  "[E]rrors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief." *Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999).  Such errors necessarily fail "because infirmities in state habeas proceedings do not constitute grounds for relief in federal court." *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997).

## VI.  MOTION FOR SUMMARY JUDGMENT

In light of respondent's answer filed in this action, petitioner moved for summary judgment on September 1, 2006.  He moves for summary judgment

> because His [sic] sentence, Cadena Temporal, is Unconstitutional, where it makes no measurable contributions to acceptable goals of Punishment, and hence is nothing more than the purposeless, needless imposition of pain and suffering; is grossly out of proportion to the severity of Petitioner's crime, and is disproportionate punishment sustained through fraud and exploitation, where Discriminatory Privileges bestowed in violation of evolving standards of decency, i.e., "Cruel and Unusual Punishment".

10

The Court should deny petitioner's motion for summary judgment for the same reasons that it should deny his habeas petition.

## VII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein, an evidentiary hearing appears unnecessary.

## VIII.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.  It is further recommended that the District Court **DENY** petitioner's request to terminate the assignment of the undersigned Magistrate Judge to this case and **DENY** his motion for summary judgment.

**SIGNED this 19th day of December, 2006.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE